IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFERY W.,[1]

          Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

No. 2:18-cv-00345-HZ

OPINION & ORDER

George J. Wall
825 NE 20th Avenue, Suite 330
Portland, OR 97232

    Attorney for Plaintiff

Billy J. Williams
United States Attorney
Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party. If applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Joseph J. Langkamer
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

     Attorneys for Defendant

HERNANDEZ, District Judge:

Plaintiff Jeffrey W. brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income (SSI). This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses and remands the Commissioner's decision for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on September 26, 2013, alleging an onset date of March 31, 1995. Tr. 143.[2] His application for DIB was denied initially and on reconsideration based on res judicata. Tr. 44–46, 51–53. Plaintiff voluntarily withdrew his DIB claim in a letter dated January 11, 2016. Tr. 117. Plaintiff's SSI claim was denied initially and on reconsideration. Tr. 19.

On January 26, 2016, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 633. On April 27, 2016, the ALJ found Plaintiff not disabled. Tr. 33. The Appeals Council denied review. Tr. 7.

## FACTUAL BACKGROUND

Plaintiff alleged disability based on manic depressive disorder, bipolar disorder, antisocial personality disorder, severe hypertension, and sleep apnea. Tr. 148. At the time of the

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed as Docket No. 11.

application, he was 42 years old. Tr. 31. He has a high school education and no past relevant

work experience. Tr. 31.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure.

*See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses

five-step procedure to determine disability. The claimant bears the ultimate burden of proving

disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137,

140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines

whether the claimant has a "medically severe impairment or combination of impairments."

*Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c. If not, the claimant is not

disabled.

In step three, the Commissioner determines whether the claimant's impairments, singly

or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20

C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant can perform other work that exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his application date of September 26, 2013. Tr. 22. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "bipolar disorder vs. depressive disorder, anxiety-related disorders, including posttraumatic stress disorder (PTSD), and cannabis dependence." Tr. 22. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 23. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following limitations:

> The claimant can perform simple, repetitive tasks. The claimant cannot have interaction with the public. The claimant can have superficial interaction with coworkers and supervisors. The claimant should have a job where he is working primarily in isolation and in an environment with a limited number of people. (i.e., no more than 5 coworkers). The claimant should not work in coordination with others.

Tr. 24. Plaintiff had no past relevant work. Tr. 31. But at step five the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, such as "industrial cleaner," "laundry worker II," and "cleaner, housekeeping." Tr. 32. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 33.

///

**STANDARD OF REVIEW**

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (1) making several critical factual mistakes; (2) improperly rejecting the opinion of treating physician Renee Grandi, MD; (3) improperly rejecting the opinion of Jeff Harman, LPC; and (4) improperly rejecting the opinions of two agency reviewing psychologists.[3] Pl. Br. 2, ECF 15. Plaintiff also argues that the ALJ's RFC requires a finding of disability under Social Security Ruling ("SSR") 85-15. *Id.* at 11.

---

[3] In his opening brief, Plaintiff also argued that the Court should remand the case for further proceedings to complete the record, which was missing two pages of lay witness testimony. Pl. Br. 2, 12. Because the Commissioner provided the two missing pages of the transcript after filing his response brief, Plaintiff withdrew his request for a sentence six remand. Pl. Reply Br. 2, ECF 20.

**I.     Alleged Factual Errors**

Plaintiff first argues that the ALJ did not properly consider the record because she made several critical factual mistakes. Pl. Br. 6. Specifically, he contends the ALJ erroneously stated that Plaintiff tried to hang himself over 25 years ago; misstated Plaintiff's GAF as 68; and incorrectly found that Dr. Grandi did not know of Plaintiff's marijuana use. *Id.* Plaintiff contends that these erroneous findings show that the ALJ did not properly evaluate the record such that the ALJ's decision contains legal error and is unsupported by substantial evidence. *Id.* at 6–7 (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

Plaintiff, however, has not indicated how the ALJ's findings would have change the outcome of this case. In addition, these findings are reasonable and supported by the record. First, though the testimony elicited by Plaintiff's attorney suggests that Plaintiff's suicide attempt in jail occurred in the year before the hearing, tr. 650–51, mental health records suggest that this occurred in 1990, tr. 302. Correctional facility records from January 2015 do not describe any suicide attempt and indicate that Plaintiff was, at that time, a low risk for suicide. Tr. 583. Second, contrary to Plaintiff's assertion, the GAF score in question appears to be 68 as the ALJ described. Tr. 509. Third, the ALJ did not find that Dr. Grandi was unaware of Plaintiff's marijuana use. Rather, he found that Dr. Grandi may not have been aware of the "frequency" of Plaintiff's marijuana use. Tr. 30. This is not inconsistent with Dr. Grandi's cautious approval of a medical marijuana card and encouragement to use marijuana sensibly. Tr. 254. Accordingly, the ALJ's findings do not constitute harmful error.

**II.    Opinion of Dr. Renee Grandi**

Plaintiff argues that the ALJ erred in giving little weight to the opinion of treating physician Dr. Renee Grandi. Pl. Br. 7. There are three types of medical opinions in social

security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a reviewing physician, *id.*, and more weight is given to an examining physician than to a nonexamining physician, See *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.*; *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007); *Widmark*, 454 F.3d at 1066. However, the ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

On November 12, 2014, Dr. Grandi wrote a letter in support of Plaintiff's application for disability benefits. Tr. 438. At that time, Dr. Grandi had been Plaintiff's treating doctor for 18 months. Tr. 438. In his letter, Dr. Grandi opined that Plaintiff's psychiatric diagnoses of anxiety, bipolar disorder, and anger outbursts "make him fully disabled and incapable of sustaining full-time work at this time or in the foreseeable future." Tr. 438.

The ALJ gave five reasons for discounting the opinion of Dr. Grandi. First, the ALJ appears to discount Dr. Grandi's opinion because of the ALJ's finding that Plaintiff's irritable bowel syndrome is non-severe. Tr. 30. Dr. Grandi, however, does not attribute Plaintiff's limitations to irritable bowel syndrome. Instead, as described above, Dr. Grandi opines that Plaintiff's "psychiatric diagnoses make him fully disabled and incapable of sustaining full-time

work at this time or in the foreseeable future." Tr. 438. As a result, the ALJ's finding of nonseverity does not cast any doubt on Dr. Grandi's opinion as to Plaintiff's limitations caused by his severe psychological impairments.

Second, the ALJ finds Plaintiff's anxiety and bipolar disorder were stable and well-managed with medication. Tr. 30. She explained that "contrary to Dr. Gradi's [sic] description of severe anxiety, the claimant reported that his anxiety is well managed with clonazepam." Tr. 30. Similarly, the ALJ concluded that Plaintiff's bipolar disorder is "more stable and improved with medication." Tr. 30. The record does not support the ALJ's findings.

Dr. Grandi's opinion that Plaintiff's anxiety is severe is supported by the record. At many of his medical appointments, providers noted that Plaintiff was nervous and anxious. *See* tr. 257, 253, 300, 403, 532. Plaintiff needs clonazepam to help him leave his house. Tr. 414. He uses it to go to the grocery store, family gatherings, and sit in the medical office waiting room. Tr. 549, 406, 421. He could not comply with his probation and community service requirements because of his social anxiety. Tr. 511. He reported to providers that he could not tolerate social activities and spent holidays alone. Tr. 532, 533, 489, 435. Though Dr. Grandi noted that the clonazepam was helpful, she also pointed out that it was not a long-term solution for Plaintiff's anxiety. Tr. 418. Thus, the ALJ's suggestion that Plaintiff's anxiety is well-managed with medication is unsupported by substantial evidence in the record.

As to Plaintiff's bipolar disorder, the record again does not support the ALJ's reasoning. Throughout the relevant period, Plaintiff has struggled on and off with suicidal ideation. In September 2013, Plaintiff was admitted to the hospital after a suicide attempt. Tr. 235. In February 2014, he reported occasional passive suicidality. Tr. 302. Again, in December 2015, Plaintiff called his counselor threatening suicide. Tr. 534. He continued to experience suicidal

ideation in the weeks that followed. Tr. 533, 544. Plaintiff has also consistently struggled with nightmares and insomnia, which generally did not improve with medication. Tr. 257, 400, 488, 541. Plaintiff often reported symptoms of depression, tr. 444, 511, 509, 421, 506, 541, 512, and providers observed a dysthymic and subdued mood and blunted or constricted affect, tr. 303, 410, 492, 490, 536, 532. In the context of the overall record, any brief periods of improvement are not legally sufficient for discounting the opinion of Dr. Grandi. *See Garrison,* 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Further, as this Court has held, the stability of Plaintiff's bipolar disorder does not indicate that it was not a debilitating impairment. *See Marti Jean K. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-cv-00109-HZ, 2019 WL 3061561, at *7 (D. Or. July 10, 2019) (citing cases).

Third, the ALJ cites conflicts between Dr. Grandi's opinion that Plaintiff's anger outbursts contributed to his disability and the testimony of Plaintiff's aunt, which reflected only one outburst since September 2013. Tr. 30. But this perceived inconsistency is not clear or convincing in light of the record as a whole. Though Plaintiff's aunt was only "aware of" one major outburst since September 2013, tr. 658, medical records reflect additional difficulties with his anger. Plaintiff reported to providers that he was fearful of his anger and outbursts. Tr. 444. His "inability to cope" has resulted in arrest. Tr. 490. He also reported to providers in 2015 that he had a "blow-out" with his dad and was "tazed" and restrained by five people because he "lost it" in jail. Tr. 488, 506. In other words, Dr. Grandi's testimony that Plaintiff struggled with anger outbursts is consistent with records of those outbursts.

Fourth, the ALJ asserts that Dr. Grandi's opinion conflicts with her treatment records, "which note some depression and anxiety, but otherwise describe the claimant as having normal speech and behavior, normal judgment and normal memory and cognition during appointments." Tr. 30. But Plaintiff's normal speech, judgment, and memory do not conflict with Dr. Grandi's assertion that Plaintiff's psychiatric impairments cause significant limitations in Plaintiff's ability to work. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (noting that "observations of cognitive functioning during therapy sessions [did] not contradict [the plaintiff's] reported symptoms of depression and social anxiety"). Indeed, as described above, the medical records reveal that Plaintiff was often anxious and nervous, exhibited signs of depression, and struggled with insomnia, nightmares, and suicidal ideation. In other words, the treatment records note symptoms of depression and anxiety, and Plaintiff's normal cognitive functioning is not inconsistent with such conditions.

Finally, the ALJ noted that Dr. Grandi's opinion did not mention Plaintiff's ongoing marijuana use, "which suggests that she was not fully cognizant of the frequency of his use." Tr. 30. Again, the ALJ's finding is unsupported by Dr. Grandi's records. First, Dr. Grandi knew that Plaintiff used marijuana as she agreed to provide Plaintiff with a medical marijuana card in 2013 and encouraged him to use it "sensibly." Tr. 254. Records also reveal that Plaintiff's marijuana use in 2014 and 2015 was more limited that the ALJ suggests. For example, Plaintiff repeatedly reported periods without marijuana use. Tr. 507 (December 2014 chart note indicating he had quit using marijuana for the past 4-5 months), 418 (reporting in February 2015 that he wasn't using marijuana), 532 (reporting in January 2016 that he had not used for the last 2-3 months). In this context, the Court fails to see how the failure of Dr. Grandi's letter to refer to Plaintiff's marijuana use undermines her opinion about the severity of Plaintiff's conditions. In sum, the

ALJ's reasoning for giving Dr. Grandi's opinion little weight is unsupported by substantial evidence in the record, and the ALJ has therefore erred in discounting her opinion.

## II. Opinion of Jeff Harman, LPC

Plaintiff argues that the ALJ erred in giving light weight to the opinion of Jeff Harman, LPC. Pl. Br. 9. Licensed counselors are not considered acceptable medical sources. *See Blodgett v. Comm'r Soc. Sec. Admin.*, 534 Fed.Appx. 608, 610 (9th Cir. 2013) (noting that the opinion of a licensed professional counselor was an "other source" opinion). Information from medical sources other than "acceptable medical sources" may provide insight into "the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p. The ALJ must consider several factors when evaluating the opinion of such sources, including: (1) length of relationship and frequency of contact; (2) consistency of opinion with other evidence; (3) quality of source's explanation for opinion; (4) any specialty or expertise related to impairment; and (5) any other factors tending to support or refute the opinion. *See* SSR 06-03p; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under Ninth Circuit law, evidence from "other sources" is considered under the same standard as that used to evaluate lay witness testimony, meaning the ALJ may reject it for reasons germane to the witness. *Molina v. Astrue*, 674 F.3d 1104, 1111 (2012) (Because a physician's assistant was not an acceptable medical source, the ALJ could discount a physician's assistant's opinion for germane reasons).

Mr. Harman began seeing Plaintiff in September 2013. Tr. 263. On June 12, 2014, Mr. Harman competed a mental residual functional capacity assessment. Tr. 396–98. In his assessment, Mr. Harman opined that Plaintiff would have a moderate impairment in most activities and no or slight difficulty with carrying out short and simple repetitive instructions or tasks, traveling to unfamiliar settings, and using public transportation. Tr. 396–98. Mr. Harman

found Plaintiff would be severely impaired in: working in coordination with or in proximity to others without being distracted; interacting appropriately with the general public or customers; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; and responding appropriately to expected and unexpected changes in the work setting and routine. Tr. 397. Mr. Harman concluded that difficult customers, production demands or quotas, demands for accuracy, and attendance requirements would "increase the level of impairment beyond those indicated." Tr. 398. Mr. Harman also stated that a routine, repetitive, simple, entry-level job would exacerbate psychologically based symptoms. Tr. 398.

The ALJ gave limited weight to Mr. Harman's opinion for three reasons: (1) Mr. Harman is not an acceptable medical source; (2) Mr. Harman's opinion was a check-box form with no narrative explanation and largely inconsistent with the longitudinal evidence; and (3) Mr. Harman's opinion was inconsistent with Plaintiff's activities of daily living. Tr. 30.

First, the ALJ incorrectly asserts in her opinion that she is "unable to give" Dr. Harman's opinion more than limited weight because he is not an acceptable medical source. Tr. 30. Under the regulations, the ALJ can give a non-acceptable medical source significant weight. *See* SSR 06-03; 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1) ("Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source[.]"). On its own, this is not a germane reason to give Dr. Harman's opinion little weight.

Second, the ALJ erred in finding that Mr. Harman's check-box form is largely inconsistent with the longitudinal evidence is unsupported by the record. Specifically, the ALJ finds that the medical evidence shows that Plaintiff's anxiety is effectively managed with medication, his depression improved with mood stabilizers, and that he demonstrated appropriate and cooperative behavior and normal cognitive function. Tr. 30. As described above, however, this characterization of the record is unsupported by substantial evidence. *See surpa* Section II. Rather, the medical record shows that Plaintiff continues to struggle with severe anxiety, depression, anger, and suicidal ideation. *Id.*

Third, Mr. Harman's opinion is consistent with Plaintiff's daily activities. As Plaintiff points out, his activities are largely solitary and limited. Pl. Br. 10. Plaintiff testified he spends time watching movies, gardening, walking with his dog, and fishing. Tr. 649. He described camping on the side of the river where there are never any people. Tr. 650. He reported similar activities to his providers. He told Mr. Harman that he hikes into the words to disappear for three to four weeks. Tr. 264. He similarly reported camping for 10 days to Dr. Grandi. Tr. 293, 444. He also conveyed to his providers that he enjoyed solitary activities while also reporting that he avoided social interaction. For example, he told Dr. Harman that he was blowing glass ornaments to sell for Christmas but avoiding social interactions. Tr. 509. He enjoys activities by himself such as gardening, cooking, and maintaining his home but feels depressed he cannot be with family. Tr. 490, 540 (gardens on nicer days but does not get away from home unless he has an appointment). These activities are not inconsistent with Plaintiff's assessed limitations, which include severe limitations in working and interacting with others. Tr. 397–98.   The ALJ has therefore erred in discounting Mr. Harman's opinion as inconsistent with Plaintiff's daily activities.

## IV. RFC Formulation

Plaintiff argues that the ALJ erred in failing to incorporate certain portions of the opinions of two agency reviewing psychologists, Drs. Anderson and Boyd, in the RFC assessment. Pl. Br. 10–11. Specifically, Plaintiff argues that the ALJ failed to consider their assessment that Plaintiff "may have difficulty responding to criticism occasionally." *Id.* (citing tr. 605, 625). Because the vocational expert testified that Plaintiff may not be able to continue his employment depending on how severely he reacted to criticism, Plaintiff alleges that the ALJ's failure to account for this limitation is a harmful legal error. Defendant responds by arguing that the ALJ incorporated the opinions of both doctors by including various social interaction limitations in his RFC. Def. Br. 9, ECF 17. Defendant also argues that the Court should affirm the ALJ's decision because the vocational expert was equivocal on whether this limitation would preclude employment. *Id*.

The ALJ has the responsibility of determining a claimant's RFC. 20 C.F.R. § 416.946(c). The RFC is used at step four of the sequential analysis to determine if a claimant is able to perform past relevant work, and at step five to determine if a claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(a). The RFC reflects the most an individual can do. 20 C.F.R. § 416.945. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert ("VE"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). The Court should uphold step four and five determinations "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss*, 427 F.3d at 1217.

Dr. Anderson provided the initial mental residual functional capacity assessment. Tr. 604. She found that Plaintiff had sustained concentration and persistence limitations and various other social limitations. Tr. 604–605. She also found that he would be moderately limited in his ability to work in coordination with or in close proximity to others without being distracted, interact appropriately with the general public, and accept instructions and respond appropriately to criticism from supervisors. Tr. 605. She wrote that Plaintiff "works best independently or in smaller groups" and "will struggle with close interaction with coworkers." Tr. 605. She noted that Plaintiff is "disheveled and can be irritable occasionally." Tr. 605. Dr. Anderson opined that he should have no contact with the general public and may have difficultly responding to criticism occasionally. Tr. 605. At reconsideration, Dr. Boyd adopted an identical mental residual functional capacity. Tr. 624.

The ALJ "accord[ed] significant weight to Dr. Anderson's and Dr. Boyd's opinions," finding that they were "generally consistent with the overall evidence." Tr. 31. She wrote that she incorporated their opinions:

> by limiting the claimant to jobs where he is working primarily in isolation and not in coordination with others, where he has no contact with the public and no more than superficial interaction with coworkers and supervisors, and where there will be few people in proximity to him (i.e. no more than 5 coworkers).

Tr. 31. Consistent with this finding, the RFC limited Plaintiff to no interaction with the public, superficial interaction with coworkers and supervisors, and a job where Plaintiff works primarily in isolation and with no more than five coworkers. Tr. 24.

The Court finds that the ALJ erred in formulating her RFC. Though the ALJ found Plaintiff was limited to "superficial interaction with . . . supervisors," the record is ambiguous as to whether this limitation incorporates Dr. Anderson's and Dr. Boyd's opinions that Plaintiff would be moderately impaired in his ability to accept instructions and respond appropriately to

criticism from supervisors. The ALJ posed a hypothetical to the Vocational Expert that included "superficial interaction with coworkers and supervisors." Tr. 662. Given this limitation, the VE opined that Plaintiff could work as an industrial cleaner, laundry worker, and "cleaner housekeeping." Tr. 662–63. The ALJ then reframed her hypothetical to include "difficulty responding to criticism occasionally," consistent with the reviewing physicians' RFC assessments. Tr. 663. The vocational expert responded that this would not change his testimony, except that the effect of his difficulty responding to criticism "would depend on how that would manifest, or if that would lead to an altercation of some sort." Tr. 663. Consequently, the hearing testimony elicited suggests that "superficial interaction with a supervisor" does not encompass Plaintiff's additional difficulties responding to criticism.

This error is not harmless. At the hearing, the ALJ asked the vocational expert whether verbal or other outbursts on the job would be tolerated. Tr. 666. The vocational expert responded:

> For a verbal or physical altercation with a coworker, with a supervisor, or with the public, my opinion is that it can be anywhere from a one to five step range, where an employer may give a verbal warning, a written notice, suspension followed by termination. Depending on the severity of that verbal or physical altercation, an employer may terminate on the first or fifth occurrence[.]

Tr. 666. Given this testimony, a reasonable ALJ properly incorporating the limitations described by the reviewing physicians could have concluded that Plaintiff was disabled. *See Kelsi R. v. Berryhill*, No. 6:17-CV-02046-MK, 2019 WL 2028531, at *8 (D. Or. May 8, 2019) ("[S]erious interference in Plaintiff's ability to respond appropriately to supervision could 'justify a finding of disability.'"); *Deloney v. Astrue*, No. 2:10-CV-2687 DAD, 2013 WL 618213, at *5 (E.D. Cal. Feb. 19, 2013) (noting vocational expert testimony that a moderate limitation in accepting

instructions and responding appropriately to criticism from a supervisor would "preclude employment."). Accordingly, this error was not inconsequential to the non-disability decision.

## V. SSR 85-15

Plaintiff argues that the ALJ should have found Plaintiff disabled given her RFC assessment. Pl. Br. 11. According to Plaintiff, the ALJ's assessment that Plaintiff could handle no more than superficial contact with supervisors commands a finding of disability under SSR 85-15 because "superficial contact with supervisors" is incompatible with the ability to "respond appropriately to supervision" as required for unskilled work. *Id.* SSR 85-15 provides:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

Plaintiff cites no legal support for his argument, and the Court finds none. Indeed, at least three other district courts have rejected similar arguments in the context of limitations to minimal or superficial interactions with supervisors. *See Markell v. Berryhill*, No. 17-CV-00792-MEJ, 2017 WL 6316825, at *9 (N.D. Cal. Dec. 11, 2017) (finding no conflict between a limitation to "superficial interaction with co-workers and supervisors" and the vocational expert's testimony that the plaintiff could perform unskilled work); *see also Blackmon v. Berryhill*, Case No. 17-cv-01669-BAS (RNB), 2018 WL 2717769, at *4 (S.D. Cal. June 5, 2018) ("[A] limitation to superficial interaction with co-workers and minimal interaction with supervisors does not necessarily constitute a substantial loss of ability to respond appropriately to supervision, coworkers, and usual work situations so as to necessitate a finding of disability under S.S.R. 85-15."); *Walsh v. Comm'r Soc. Sec. Admin.*, No. CV-15-02466-PHX-GMS, 2017 WL 1130366, at

\*3 (D. Ariz. Mar. 27, 2017) ("The most natural reading of the ALJ's RFC is that [Plaintiff] retains the ability to respond appropriately in interactions with co-workers and supervisors, so long as those interactions are, by the nature of a given job, superficial and minimal, respectively."). And the vocational expert identified at least three jobs in the national economy that Plaintiff could perform with this limitation. Tr. 28. Therefore, the Court finds that the ALJ's RFC limiting Plaintiff to superficial interaction with coworkers does not command a finding of disability under SSR 85-15.

## CONCLUSION

Based on the above, the Commissioner's decision is REVERSED and REMANDED for administrative proceedings.

IT IS SO ORDERED.

Dated this 31 day of August, 2019.

_____
MARCO A. HERNÁNDEZ
United States District Judge